Common Pleas Court of Trumbull County.

GOLF LAND CO. V. UNION SAVINGS & TRUST CO.

Decided May 17, 1932.

R. H. Patchin, for plaintiff.

Paul E. Kightlinger and Gilbert Bettman, for defendant.

GRIFFITH, J.

This is an action brought by the Golf Land Company against I. J. Fulton, Superintendent of Banks of the state of Ohio in charge of liquidation of the Union Savings & Trust Company, a banking corporation of Warren, Ohio, wherein plaintiff is seeking to have certain trust funds which it deposited in the Bank declared preferred claims as against the general creditors of the bank.

The Union Savings & Trust Company was a banking corporation organized under the banking laws of this state, with a trust department duly established, and was the oldest banking institution in Trumbull county.

Prior to August 20th, 1931, it was qualified to do and was doing a general banking business with a trust de-

partment, a commercial department and a savings department.

The Golf Land Company was and is a corporation organized for the purpose of promoting and operating a country club known as the Trumbull County Club.

The plaintiff some years ago acquired about one hundred forty acres of land in Howland township, Trumbull county, and erected thereon a club house and built a golf course. In the year, 1929, wishing to secure funds to refinance this proposition, the Golf Land Company entered into an agreement with the Union Savings & Trust Company Bank, through its trust department, by the terms of which the bank was to become trustee and hold title to the real property of The Golf Land Company to secure an issue of $70,000.00 first mortgage, 15 year, 6% sinking fund gold bonds, of said Golf Land Company. Said bonds were duly issued and sold to various persons in Warren and vicinity. These bonds had attached thereto coupons, representing the interest thereon, payable on the 1st of September and the 1st day of March of each year.

The said mortgage deed and the bonds and coupons provided that the bank, as trustee, was to receive money from the Golf Land Company to pay said bonds and the interest thereon, and was to act as the trustee as defined in the indenture for the purpose of distributing such money to the holders of the bonds, both for principal and for interest.

On March 2nd, 1931, twenty of the said bonds numbered from C-342 to C-361 inclusive, in the total sum of two thousand dollars were paid by and thru said trustee bank; interest had been paid on said bonds through said trustee bank up to March 1st, 1931. Since March 1st, 1931, deposits were made in said trust department of said bank for the payment of interest due on said bonds September 1st, 1931, as follows: April 21st, 1931, $340.00; July 16th, 1931, $1,020.00; August 7th, 1931, $680.00, total $2040.00. This sum was a non-interest bearing deposit, not subject to withdrawal by the Golf Land Company, and was made for the sole purpose of paying the interest to become due

on the $68,000.000 of bonds of said company outstanding at 6% from March 1st, 1931, to September 1st, 1931, in said sum of $2,040.00.

The deposits were made by the plaintiff by checks and the $1,020.00 check bore this notation on its face—"to apply on bond interest due Sept. 1, 1931." The check for $340.00 bore this notation on its face—"for bond interest to 4-1-31, 1st mtge. 6%."

There is no dispute as to the fact that the entire deposit of $2,040.00 was a trust deposit made to the trust department, accepted and recorded in the records of the trust department, as deposits to pay interest due September 1st, 1931 (see plaintiff's exhibit "E"). There is no evidence whatever that the trust department ever transferred this account to the commercial department of the bank, and in the absence of such evidence the only record of this deposit in the defendant institution is the record disclosed by plaintiff's Exhibit E. On August 20th, 1931, the defendant, I. J. Fulton, as Superintendent of Banks for the State of Ohio, took possession and control of the Union Savings & Trust Company, proof of claim was made by the plaintiff in September, 1931, and presented to the defendant, and a further claim was filed with the defendant asking that this claim be allowed by the defendant, Supt. of Banks, as a preferred claim against the assets of the bank, but was rejected as a preferred claim. From the time the plaintiff, the Golf Land Company made the deposits in the bank until the closing of the bank on August 20th, 1931, there was continuously in the bank cash in excess of the plaintiff's deposits; at the time of the closing of the bank there was cash in the vaults of the bank in the sum of $69,384.88, and since that time preferred claims have been paid in the sum of $50,731.24. Other preferred claims upon which no action has been taken have been filed in the sum of $15,020.30. The total preferred claims filed and the trust funds aggregate $213,551.56.

The only controversy between the parties in this action is whether the claim of the plaintiff shall be preferred over that of general creditors.

The Union Savings & Trust Company was Trustee by contract. The plaintiff deposited $2,040.00 with the trustee for a specific purpose, to-wit: to pay the interest which amounted to exactly $2,040.00 on the bonds, and this interest was due and payable September 1st, 1931. Is the character of this deposit such that the plaintiff is merely a general creditor of the insolvent depository and entitled only to its *pro rata* share of the fund for distribution?

All deposits made with bankers may be divided into two classes namely those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business in which the depositor for his own convenience parts with the title to his money and loans it to the banker, and the latter in consideration of the loan of the money and the right to use it for his own profit agrees to refund the same amount or any part thereof on demand." *Marine Bank* v. *Fulton Bank*, 69 U. S., 252.

If the deposits are trust deposits they may be special deposits or they may be specific deposits., *i. e.* deposits for a specific purpose. A special deposit is one when the depositor leaves the deposit for safe keeping and return of the identical deposit to the depositor. A specific deposit exists when money is given to a bank for some specific and particular specific obligation.

The money in dispute, $2,040.00, was deposited in the Union Savings & Trust Company for the specific purpose of paying the interest coupons due Sept. 1st, 1931. The money upon its deposit in the bank became a trust fund to be held by the bank in trust until September 1st, when it was required to pay the entire sum of $2,040.00 for interest due on that date, that being the exact amount due in interest on that date. Manifestly it was a specific deposit in a specific sum for a specific purpose. The bank was bound to keep intact this amount of money for the purpose of the trust. The bank was obligated to preserve, not the indentical currency deposited, but the sum of $2,040.00 as a trust fund for the payment

of this interest, and to apply it to this specific purpose when September 1st arrived, and the title to such fund did not pass to the bank as a part of the general funds of the institution.

The evidence discloses that this fund was deposited in the trust department, it was never deposited in the commercial department by the plaintiff, nor was it ever entered upon the records of the commercial department as a deposit in said department. It was deposited with the Union Savings & Trust Company, Trustee. It was clearly not the purpose of the Golf Land Company in making these deposits which aggregated the exact amount of interest due on September 1st, 1931, on the $68,000. issue of bonds outstanding, to become a general depositor of the bank, but it was a specific deposit to be applied to the payment of interest on the bonds.

Section 710-165 provides:

"No property or securities received or held by any trust company in trust shall be mingled with the investments of the capital stock or other properties belonging to such trust company or be liable for its debts or obligations. Moneys pending distribution or investment may be treated as a deposit in the trust department or may be deposited in any other department of the bank, subject in other respects to the provisions of law relating to deposit of trust funds by trustees and others."

There is evidence that this $2,040. was deposited in the trust department and a record thereof made as shown by plaintiff's Exhibit E, and there is no evidence that any account was opened between the trust department and the commercial department. When the bank was taken over by the Superintendent of Banks the money was in the vault as a commercial fund with nothing to indicate what moneys came from the trust department and what moneys came from any other department.

Under the terms of the trust mortgage, the trust department was bound to fulfill its part of the trust agreement by honoring bonds and coupons as they mature. The trust department by virtue of the latter part of Section 710-165 deposited its funds in the commercial

department to such an extent that on the day the bank closed the deposits of the trust department in the commercial department exceeded the cash on hand, and in the vault by over fifty thousand dollars. The plaintiff left its deposits with the trust department and the trust department, the savings department and the commercial department are all under one head, operating in one room, with a single board of directors, a trinity comprising one corporate entity, to-wit: The Union Savings & Trust Company. The Union Savings & Trust Company was the institution which received these funds, not the trust department of the Union Savings & Trust Company, but the whole institution entered into the contract through its trust department, and the whole institiution had notice of the execution of this contract, the reception of these deposits, and the purpose of the deposits. May the bank receive this money in its right hand as a trustee for a specific purpose, and then shift it over and pass it out with the left hand as a general deposit of the bank? Here is one single board of directors directing the policy of the whole bank. Knowledge to the trust department is knowledge to the board of directors and thus to the entire institution.

Supposing the plaintiff had left the deposits with the commercial department of this institution, under like conditions, would not the character of the deposits have remained the same? Here was a fund that came into possession of the bank, with repect to which the bank had but a single duty to perform, and that is to pay it to the party entitled to the interest on the bonds; admitting that the money deposited by this plaintiff in the trust department was by the trust department deposited in the comcercial department, and there co-mingled with the general assets of the bank so that when the Superintendent took charge of the bank there were no means whereby any particular money could be identified as the money originally received from the trust department. That, however, in no wise alters the fact that the Union Savings & Trust Company received this money in its trust department for a specific purpose, and could not relieve itself of the carrying out of that purpose by depositing

the money in some other department of the bank, nor by any manner of book keeping adopted by the bank for its own convenience either in its trust department or its commercial department. Admitting that the trust department did deposit it in the commercial department and it was mingled with the other cash in the bank, in the commercial department, however, this is not an action seeking to recover the identical money in bills deposited, but a suit to recover a certain sum of money held in trust.

It appears from the facts in this case that at all times, from the making of the deposits by the plaintiff, to the time the bank closed, there was in its vaults money in amount and value equal to the money so deposited.

The Superintendent of Banks took the property of the bank which came into his hands for administration, subject to all the legal and equitable claims that existed against the bank at the time it was closed. Did the course of conduct on the part of the trust company in depositing the trust funds in the commercial department change the relationship of bailor and bailee to that of debtor and creditor? These funds were specific trust funds and to hold that the trustee by depositing the funds in the commercial department changed their character and that the funds as soon as they reached the commercial department partake of the character of the commercial funds, and lose all their trust character, would be manifestly contrary to the very purpose of trust companies and their statutory establishment and would destroy all public confidence in said institution. To hold otherwise would be to open wide the powers of trust departments, to undermine public confidence in such institutions. No prudent citizen would feel safe in transacting trust business with such. Public policy dictates, honesty of dealing compels, and the sanctity of contract requires this construction of Section 710-165 of the General Code.

For the reasons above stated, the court is of the opinion that the plaintiff is entitled to have its claim in the sum of $2,040. allowed as a preferred claim and paid as such, and a decree may be drawn accordingly. Exceptions being noted for all parties adversely affected by this decision.